Please call the next case. Case 3-15-079B. This is the Deatherage v. Workers' Compensation Comm'n. Counsel may proceed. Thank you, Judge. Good morning, Your Honors. Please support counsel. We're here today, Judge, to ask the Court to consider a Keating ruling or a Section 4D finding that, first of all, the finder is a statutory employer, and second of all, that that statutory employer knowingly failed to procure workers' compensation insurance. Meaning the elderly women that own the building? The women that own the buildings, that own six commercial properties that they rent out for commercial purposes to commercial tenants and derive a profit from those. Before you get too far into this, can you illuminate something for us? I mean, Tipton is in the center of this thing. Both parties talk about him. Both parties disagree on his role. And both parties cite to his deposition. I take it this was a discovery deposition? Yes, Judge. There is a civil case that was going on wherein Ms. Groom and Metternich are named as defendants, and Tipton was named as a defendant, as well as Ameren was named as a defendant. But there was no evidence deposition here, right? There's no evidence deposition, correct. This is a discovery. And the Commission never directed any specific findings against Tipton, did they? They did not, Judge. Okay, I just wanted to clarify that. The panel was asked to just simply rule on the issue of the 4D finding as it relates to Ms. Groom and Ms. Metternich. But he's not a party to this proceeding? He was named, I believe, as a party to the application for adjustment of the claim, but he did not show up at the hearing before the three arbitrations. And they made no findings against him, and he's not a party to the appeal? Correct. Okay. So was the discovery deposition stipulated into evidence? Is that what happened? As far as I know, Judge, all of the evidence that was presented before the arbitrator was stipulated. It would have had to have been if you're citing his testimony. And it became a part of the report as well, yes. Okay. So if you hire somebody to build a garage on your property, and somebody gets injured, and the contractor doesn't have workers' compensation, the homeowner's liable? I don't think that the homeowner in a residential situation falls in the same context as these two women that run a commercial property business does, Judge. And that's one of the arguments that we make in our brief, is that because of the manner of their enterprise, their commercial rental property, and again, they own six buildings, which they all rent out to tenants for commercial business reasons. These aren't, you know, rental houses that they rent out to people. It's not a situation where they're renting out a house to somebody, and that person then is taking essentially constructive possession, where they'd be found out for maintaining it. These are commercial buildings that have multiple units in them, which are rented out to commercial businesses. In fact, this particular building where this incident occurred has, I believe, five or six commercial tenants in it. And Mr. Tifton had been engaged, as he testified to, essentially to be their handyman. He was always the person they employed to go in and do renovations to these properties once a tenant had left the property to go back in, fix it up, so that it could be re-rented to another tenant. He did not carry workers' compensation insurance, as we know from his testimony. He did indicate that he had founders' insurance, but founders' insurance does not provide workers' compensation insurance. They're, in fact, an automobile insurance company. Second of all, Mr. Tipton never provided any certificate of insurance of any type for workers' compensation purposes. Well, you also have this argument. In conclusion, there is no dispute that the decedent was the direct and immediate employee of Tipton. Tipton, I mean, obviously it was disputed. Tipton denied that the decedent was his employee and gave reasons for that. And in your brief, that's your conclusion, but there was no argument citing case law or any other standards as to why he would have been an employee of Tipton. Is the conclusory allegation sufficient to carry the date? Judge, I don't think you even have to go as far as to find that he's a direct employee, because the Workers' Compensation Act provides for the relationship of a general contractor and a subcontractor. So even if you go to the assumption that Mr. Tipton is the general contractor on this project and Mr. Deathridge is an independent contractor that Mr. Tipton has hired to perform painting on this particular project, the Workers' Compensation Act still requires someone in the position of Ms. Groom and Ms. Metternich to provide workers' compensation. Are you talking about the statutory? Yes. All right. Well, there's a ruling by the circuit court that appears to be relevant here. They've argued collateral estoppel. The circuit court found that giving just due to your argument that essentially, as I understand it, the decedent was a trespasser anyway. He was doing things. He went off on a frolic and shouldn't have been where he was anyway. Why would that not be binding on appeal? Sure. Judge, I guess I would disagree with the respondent's brief in how far they're trying to stretch that particular part of the provision. I mean, what they cite is that this subsection does not apply in any case where the accident occurs elsewhere than on, in, or about the immediate premises. We're talking about a back wall, and I don't know if the picture is made into the record or not. You're talking about the full back wall of a building, and the garage does not go all the way up to the top of the back or the roof line of this building. So you've got a stretch of, I believe, 10 to 12 feet of building, a back wall that's on top of this flat top garage, which is where the decedent was painting when this electrocution occurred. So it's not a separate part of this building or even a separate part of the back wall. In fact, it's no different than if I stood here and reached over to paint a wall, an imaginary wall on the side of this lectern, and the rest of the wall extends to where Mr. Gannett is. So it's not on the roof? So it's about the area where they were painting in the first place. It's not a separate area. I understand it's not a separate building. And I guess not to put too fine of a point on it, if the contractor, if the owners hire a contractor to do something, the contractor does it and tells the employee not to go on a roof, and the decedent is up on the roof, is that an issue? Judge, I don't think that it is an issue in this particular case because of the location of this wall that we're talking about and the garage that we're talking about. Think of it in terms of the letter of the roof. It's a wall. And he's standing on a flat roof to paint the wall when he's electrocuted. In order to get to the area where he's electrocuted to paint the rest of the back wall of the building that he's been contracted to paint, he has to get on top of the wall. All right. Did you argue the matter before the circuit court? We did, Judge. Could you describe his brief as taking liberties? I thought that, according to the circuit court, Judge said he was the trust person, not them. Is that right? The judge said that if that was outside the scope of the work, and I guess I have to back up a little bit. The circuit court was never ruling on the issue of whether or not Metternich and Groom are employers. It was a premises liability case, and the court was finding that there was no duty of care owed to Mr. Dethridge. Does he trust Dethridge? Because he's saying it's outside of the scope of the work. If we set that apart, because really whether or not there's a duty of care owed or not has no bearing whatsoever, relevance to whether or not these people are statutory employers. The issues of scope of the work, control of the work, and things like that were talked about in the circuit court, and I think even quoted by counsel in their brief, that the judge is saying that control of the work, ability to make changes to the work, being able to inspect the work, in his opinion did not, or his ruling I should say, did not go far enough to show that they would have created a duty on themselves to anticipate that Mr. Dethridge would have been electrocuted by these overhead power lines that connected to the building. So it's not necessarily a finding by the circuit court that he's a trespasser. It's really that there's no finding of duty. That's what the defendants were asking the court to find in their summary judgment was that there was no duty of care owed. Let's look at the statutory language here. It says under the section you're attempting to proceed on whether or not Gruen and Metternich are statutory employees. This is anyone engaging in any business or enterprise referred to in sections who undertakes to do any work is liable to pay compensation to his immediate employees. So you're saying undertakes to do any work is not somebody actually doing the work or in any way involved in the construction. That would be undertakes to do work is the mere hiring of somebody. Yes, that's what you're saying. Undertakes means hiring. That's Tipton. That section that you're talking about is Tipton. It's not these two people. It's the next section that says that if that employer does not have workers' compensation insurance, then the person for whom they're working for is going to be responsible if they are one of the people described in subsection. In this case, it's the second paragraph of 1B. And so what you're talking about is Tipton, not talking about these two. Yes, Ms. Gruen and Ms. Metternich hired Tipton, and in fact, then Mr. Tipton hired Mr. Deathridge. Mr. Tipton has no workers' compensation insurance, but he's carrying on a business of maintaining rental properties. Gruen and Metternich own and maintain these rental properties. They're required to maintain them for their local ordinances and codes. And they've hired a guy who has no insurance. They didn't even ask him, do you have any insurance? They didn't ask him. They were aware that he was doing work on the property, and at least according to her testimony, didn't even bother to ask, do you have work comp insurance? Do your workers have work comp insurance? Do they have bonds? Do they have any way of compensating in the event that somebody gets hurt? I don't think that's a dispute. They didn't know or they didn't check. Do they have an application? I think they do, Judge. I think when they have a business of rental properties and they've got six of these things, and as counsel pointed out in their brief, they have a family history of being in and out of the insurance business and having a lawyer in the family and all these things. I think that they are under an obligation to at least make an investigation into whether or not they should have workers' compensation insurance. Is there some law there or is there some case law that says that's the case? Well, the cases that we cite are, I think, factually similar to the situation. I mean, they're not in the business of maintenance and repair, are they? They're in the business of leasing. Part of that is maintaining a commercial property, Judge. When you own a commercial property business, you've got to maintain that building. They can either do it by hiring someone as an employee or they can contract with someone to do that. Absolutely, Judge, and that's what they did in this case. And, in fact, what they did was they contracted with someone who had no workers' compensation insurance. Well, back to the point is, why is that their business? Well, the business that they have is one of the enumerated acts in the Workers' Compensation Act, as we cite to in our brief. I think it's specifically Section 1A3, subsections 1 and 2 of Section 3. Those are the enumerated acts. Maintaining a structure, altering a structure, remodeling a structure. Those are the acts that we're talking about. So you realize that in the ruling in which you're asking, every landlord across the state of Illinois would be in jeopardy here, wouldn't they? If they have a commercial property and they're going to be maintaining that property and renovating that property, then, yes, it would be in their best interest to have workers' compensation insurance in the event that the contractor that they hire doesn't. Well, it's in their best interest when they get sued, maybe, that the insurance company represents them. But is it really in their best interest? I mean, that's the only reason that's in their best interest. Well, the Workers' Compensation Act says that in the event that your subcontractor or your general contractor doesn't have insurance and you carry on one of these businesses, that you're automatically responsible to provide compensation. Is this really an ongoing business? Is the case turned on that? Are these people who, as they testified, who occasionally need work done and hire somebody, is this an ongoing Inland Steel business that they're engaging in? They have tenants moving in and out of these properties, and they, you know, every time somebody moves out, they have somebody go in and do the necessary work. I see your argument, yeah. Sure. I guess the only other thing I want to touch on, I think your honors seem to have a very good grasp of the issue here. Is there a difference between being in the business of renting commercial property as opposed to being in the business of maintaining commercial property? That's the point. Is there a difference between the two? I don't think that there is, Judge. I think if you're going to have commercial property and you're going to rent that out to tenants, it goes hand in hand that you're going to have to maintain that. Well, there's no question you're going to have to maintain it, but are you in the business of maintaining it? Or are you in the business of renting, and in order to care for the property, you have to maintain it? What is your actual business? It's a commercial leasing business. Which means what? Renting out commercial space to commercial tenants. Renting it out. Right, renting. Yeah. Not building it. No, you're right. They're not a construction company. They're not out there building projects. But isn't that important, Judge? Otherwise, every renter, as you say, would be liable under the statutory argument. I don't think that that distinction is always going to be made, Judge. And I think in this particular case, and what we're asking the court to do is to find that the commission and the circuit court's opinion on this matter, the ruling, was unreasonable and did not, well, they got it wrong, because they didn't take a reasonable position on the facts that were at hand. And, again, I think that what the Metternichs and the Grooms did in this particular case was that they had these buildings, they ordered work to be done to maintain these buildings, they hired a contractor who then, in turn, hired a subcontractor to do work, and there was no insurance. And I think that the code, the act, I mean, is clear that in that event, that they are liable, because they carry on a business. That's one of these... Even though the business is not renovating or construction work, the business is renting these tenants and they hired somebody, if you say occasionally, to do work or maintenance. To maintain them. Again, I think maintaining a property that you rent out as a business venture goes hand-in-hand with renting that property out. So if they had a single building when they did this, you'd still make the same argument, right? It's a commercial property, yes. Okay. I see your time is up. You'll have time on reply. Thank you, Judge. Thank you. Good morning. May it please the Court, Counsel. Patrick Janetin, on behalf of the Appalachian, I'm sorry, Metternich and Groom, you were making some interesting comments. And one of the things that I thought about immediately in this case is if you found in their favor, would the Department of Insurance have to send out some sort of edict to every property owner in the state of Illinois telling them you now need to carry workers' compensation insurance? Yes. I don't think that's ever been done. But I think that that's what they're asking you to do. But tell us why he's wrong, though. I mean, I understand that there would have far-reaching effects. That's why I raised the issue. Is there a difference, as Justice Hoffman says, to somebody who rents or leases property that occasionally needs repair work or, you know, who's not really in the business of renovating or not? Is that a fair distinction? I think that people that rent out buildings, if they're choosing to contract all the work to be done and they're not directly engaging in it, then they're not engaging in the business of maintaining the structure. They're hiring out to people who are engaging in that business. And it gets into a lot of different... If one maintains a building for his own use, is he in the business of maintaining buildings? You know, it's interesting. The cases that they cite are sort of... Well, that's an easy question. The answer is yes or no. I'm sorry. I said if a person maintains buildings for their own uses, i.e. because they rent them out, are they in the business of maintaining buildings? I don't think they're in the business of maintaining buildings. Because subsection 3 of 1A says anyone engaging in any business or enterprise referred to in subsections 1 and 2 of section 3 who undertakes, and 1 and 2 talks about erection, maintaining, removing, remodeling, altering, demolishing, any structure. 2 says construction, excavating, or electrical work. One has to be in the business of maintaining buildings in order to be liable under subsection 3 of 1A. So the question is, if you merely maintain your own buildings that you rent out, can it be said that you're in the business of maintaining buildings? No, I don't believe so. That better be your answer. Correct. It's interesting because they're obviously in the business of renting out the buildings, and obviously maintenance has to be done on the buildings, and the whole point of this is you contract it out to people to be done. Well, even if you did it yourself. Correct. Then you're going to be liable because the person who's doing it is your employee. Which brings up the whole net start. But if you do contract it out, as you say, then in order to be liable under 3, you actually have to be in the business of maintaining buildings. Correct. I'm a construction company, so I don't feel like doing it myself, so I hire Mr. Jones to do it for me, but I'm in the business of maintaining buildings, so I'm going to be liable under this if Mr. Jones doesn't get insurance and one of his people get hurt. But in this particular case, these people are really in the business of renting out buildings. Correct. They're not in the business of actually maintaining the buildings, they're in the business of renting them out. And occasionally you have to maintain them, as you said. That's not their business. And I don't think that that was the purpose of the word compact, and that's the whole point of this. Actually, with regards to what the word compact, we know it says that if you're a sole proprietor with no employees under your direct employee, if you're an individual business owner, you're specifically excluded from the word compact. And that's what this work act says specifically with regards to men are neck and groom. They have no obligation to have workers' compensation insurance.  by bringing this in as some sort of statutory employer under the act. It's sort of a creative argument, though. It is a creative argument. It does, too. Okay, so you're saying, you said, under the act, if you're a sole proprietor with no employees, right? Correct. You don't have to have coverage. Correct. Well, are men are neck and groom sole proprietors? Yes, and there's testimony to that effect that says that they file their tax returns individually, that they have nobody in their employee. Everything that's done to the buildings is contracted out. It's sent to contractors. So they don't do any of the work themselves. They all send it out to people or companies to do it on their behalf. It's contracting it out. It's the whole point of doing the contracting. And the whole point of this was there are a whole bunch of leaps in this argument made by the petitioner in this case, and I don't know how they get from A to F. There are a lot of intermediary things that you would have to get to where they go to make better neck and groom statutory employers under the Workers' Compensation Act. And there are just no facts. There's no evidence that they put in to somehow bring this to that conclusion. And really, if you look at the Workers' Compensation decision from the commission, their main point in this was there's no employment relationship. To get from A to B to C, first the petitioner has to establish an employment relationship between Tipton and the deceased. And there is zero evidence or zero argument to support the fact that the deceased was an employee of Tipton. Because if you think about it again, if the deceased is a sole proprietor, he has no obligation to have workers' compensation insurance, correct? This is a guy that literally wakes up every day, gets on his phone and says, what do I want to do? He's under the control of no one. That became abundantly clear by his best friend, Bruce Harris, saying, yeah, he'd wake up every day, he'd make a call and say, where can I make the most money on this given day? Most days it was in the rooping business. On this particular day, he went over and met with Tipton and Tipton said, hey, I have a painting job for you. You want to come do it? Sure. There is absolutely zero control. And if you go through all the elements of independent contractor versus employer relationship, there's really nothing to establish an employment relationship between Tipton and the deceased. So to even attach the statutory employer position that they're claiming on behalf of Groom and Metternich, you first have to find that employment relationship between Tipton and the decedent. And Tipton denied it. I mean, he said in his brief it was undisputed, but it's clearly disputed. It's disputed the whole time. Was his argument forfeited on whether or not he was an employer? I would say yes, because there's no facts in the brief. There's no argument in the brief. There's nothing legally or factually in the brief to support that. Other than the conclusion. Yeah. But, I mean, obviously it was argued on my part from the commission all the way to here in my brief, and I've never waived on that. And obviously it was an issue, and that's one of the reasons why the commission came to the decision it came to. So did the commission sort of sidestep the issue of whether or not there was a statutory? Yes. Okay. I think they did. Honestly, the decision was sort of a conclusion. So to say that again, your argument is that if Tipton was not an employer of the decedent, you can't tie it back to Metternich and Groom. Is that what you're saying? How can you? The guy is an independent contractor. He's working for himself. He has no obligation under the Workers' Compensation Act to have insurance, does he? I don't know if he's an independent contractor, but you're saying that there's a failure of proof. The evidence doesn't establish that he was not an independent contractor as found by the commission. Correct. And like I said, to even attach a statutory employment, first one has to connect the dots between the employment between Tipton didn't have insurance, therefore these other people are required to under the Act. Unless he was an employee of Tipton's. Correct. But obviously it would be my argument still even then after that, even if he were an employee, that still there's no obligation. Statutory doesn't apply. Correct. Okay. Which is then interesting, which I don't think anybody's talked about here. The whole purpose of the filing in the Workers' Compensation Commission was for them to proceed on a 4D, adding a count in circuit court of a complaint barring any sort of affirmative defenses on the part of Grimmer and Metternich under Section 4D, which is a pretty, it's a very difficult defense on the part of employers that don't have insurance. And that statute says that they have to knowingly fail to have insurance. And that's another thing the commission found, that they didn't knowingly fail to have insurance. I mean, how are they supposed to know that they need workers' comp insurance for employees that they don't even know they have? That was the whole point. But it gets into the whole, and I guess we haven't even talked about that 4D. But that was the whole point of the filing with the commission was to add that count under 4D in the circuit court. And the commission said, absolutely not. There's no actual knowledge, which the statute requires, that Grimmer and Metternich needed workers' compensation insurance for a person that they barely knew. And the other thing that we've touched on is, we talked about the collateral estoppel issue. The circuit court absolutely found this gentleman to be a trespasser on the roof. He was standing on a roof. The roof was to get to a different part of the wall, but everybody testified that part of the wall didn't need to be painted, and everybody there knew it didn't need to be painted. Why he was on the roof, nobody knows. But he was clearly a trespasser as found by the circuit court. Except if you, just to play an advocate for a moment, if you look at the statute in, around, or about the premises, you're in a pretty slender read, aren't you? I mean, he's on the premises, on the building he was supposed to be working on, correct? Correct. Outside the scope of the work, though. Isn't that a little bit of a slender read to hang your head on? Well, it says, occurs anywhere else on, in, or about the immediate premises on which... Isn't it on or about the immediate premises? Yes, but it wasn't in an area where the work was contracted to be done upon. Okay. But in closing, I think the most important thing here is that there's no employment relationship between the decedent and tipton, and therefore you... To begin with, everything flows from that. Correct. Okay. The other interesting thing that I pointed out in my brief was, there is the part of the statute that says, under A3, that the statutory employers are liable to pay compensation in any company or association authorized under the laws of state of Illinois to ensure the liability. I don't know if that section applies to an individual. I agree with that statute to say that that attaches to the workers' compensation insurance that you have, which is another interesting thing about A3. They're asking for personal liability against a group of men. They're asking to directly attack their own personal assets, where I think A3 says something opposite. I think it says it attaches to the insurance, not to the individual, if you look at a plain meaning in that statute. There's no case law on that, but it's an interesting thought in that the statutory employer, and the whole purpose of the Workers' Compensation Act was to attach insurance, and maybe that way the insurance companies can't balk and say, well, he's not an employee of this person, but the policies are obviously written to say that they have to apply if there's coverage under the Work Comp Act, and that's why it attaches to the insurance and not the individual, and it doesn't associate any sort of individual liability. Thank you. Thank you, counsel, for your argument in this matter. Well, first, we have a chance for a report. I was thinking that, counsel. Thank you, Judge. You know, I don't think this needs to be said, but even a plain reading of the definition of employer within the Work Comp Act says that an employer is every person engaging in one of the acts that's enumerated under the Act, which clearly indicates carrying on the business of erecting, maintaining, remodeling, demolishing, altering, repairing, whatever, the structure. I don't think that's what it says, counsel. Let me read it to you word for word. Anyone engaging in any business or enterprise referred to in subsections 1 or 2 of 3 of the Act. Now, Tipton certainly was engaged in an enterprise referred to in subsection 1, but certainly the two women were not. They weren't engaged in the business of maintaining buildings. They were engaged in the business of renting buildings. So Tipton was engaged in it, and if the decedent was Tipton's employee, then you go to the second section that says, in addition to there too, if he directly or indirectly engages any contractor, whether principal or subcontractor do work, he's liable to pay compensation. If any subcontractor doesn't have the insurance, but the he that they're talking about is someone engaged in the business or enterprise referred to in subsection 1 or 2. So Tipton has to be in the business, and so do they, in order for them to be liable under 1A3. And in this particular case, I don't think you can overcome the fact that they simply are not engaged in any business referred to in subsection 1 or 2 of section 3. Unless you suggest that really by renting out buildings, you're also in the business of maintaining them. That is the position we've taken, Judge. Whether it's reasonable to the court or not, that is our position, is that this business... I mean, that's what it would have to be. That was our argument. I just wanted to touch briefly on this idea, Mark, before I ran out of time, and it's just going to what Mr. Jeanette was talking about a while ago about this insurance issue and in the company of an insurance. Specifically, we're talking about section 1A3, and he's bulleted in his brief, but I don't think that that is to be interpreted in the way that he is leading the court to believe it should be interpreted in his arguments and in the brief. And I think what this section means is that if you have a subcontractor like Mr. Tipton or you have another contractor like Mr. Dethridge, and they don't have insurance, and they haven't contracted with any insurance company to provide insurance, that you may be on the hook, personally, for that if you don't have insurance. Depending on the facts. Thank you. Thank you, Counsel Volkow, for your arguments in this matter. We take it under advisement that we're in a disposition of no issues. Have a good day. Court will stand in recess, subject to call.